[File No. 6372.]

W. E. HOOPES, Appellant, v. E. B. STEVENS, M. W. Lester, and Tressie A. Lester.

E. B. STEVENS, Respondent.

(268 N. W. 651.)

Opinion filed July 28, 1936.

S. E. Ellsworth, and G. D. Reimers, for appellant.
C. B. Craven, for respondent.

CHRISTIANSON, J. The controversy presented for determination on this appeal involves the ownership of certain moneys. The plaintiff claims the entire sum belongs to him. The defendant Stevens, on the other hand, claims that only one-half of the moneys belong to the plaintiff and that the other half belongs to the defendant Stevens. The trial court found in favor of the defendant Stevens. Judgment was entered accordingly and plaintiff has appealed.

While the pleadings presented other issues, on the trial of the action the controversy was limited solely to the question of the ownership of certain moneys paid by the defendant Lester for a certain tract of land that was sold to him by the defendant Stevens, and that is the only question involved on this appeal.

The facts necessary to an understanding of the questions presented for determination on this appeal are substantially as follows: The plaintiff Hoopes had a law and collection office at Carrington in this state. In addition to making collections for others he at times purchased claims outright. In September, 1924, the defendant Stevens was employed by the plaintiff. His duties were those of clerk, bookkeeper and stenographer. The defendant took up the study of law and was registered with the plaintiff as a law student. The defendant Stevens was admitted to the Bar in this state on January 18, 1929. On January 20, 1929, the plaintiff and defendant entered into a written agreement (dated January 1, 1929) which provided that it is:

"Agreed that the relationship of employer and employe now exist-

ing between the said first party and second party may continue indefinitely as heretofore, conditioned, however, that at the close of each calendar year, or at close of such relationship, the net cash receipts shall be computed and second party may at his election, take one-third of the net cash receipts in lieu of salary computed at $30.00 per week.

"In the event such relationship is discontinued, said second party shall not enter into competitive business at Carrington, North Dakota."

The parties operated under this agreement until December 6, 1930, when a new agreement was made which, so far as material here, reads as follows:

"Agreed that the relationship of employer and employe now existing between the said first party (Hoopes) and second party (Stevens) may continue indefinitely as heretofore, conditioned, however, that at the end of each calendar year or the termination of such relationship, the net cash receipts of a certain law and collection business located at Carrington, North Dakota, and operated by first party, shall be computed and first party and second party shall share and share alike in such profits and losses accruing therefrom, and it is further agreed that each party hereto shall be permitted to draw from said business from time to time sums not to exceed the sum of $50.00 per week, the same to be charged against the respective share of each party at the computation of such profits.

"In the event W. E. Hoopes should retire, from election so to do, death, incapacity, or any other cause, the said Stevens shall take over and purchase the law and collection business above mentioned, which shall include the law library, office furniture, equipment, earnings, good will, accounts and notes receivable incidental to and constituting a part of said business, and any other real or personal property acquired or owned in connection with the conduct of said business, and in consideration for employment and said business pay to W. E. Hoopes or M. Grace Hoopes, or the survivor, the sum of $150.00 per mouth during life, and upon both having died, he, the said E. B. Stevens, shall become the sole owner of said business as above set out and described. It is further agreed that the relationship hereinbefore mentioned may be terminated by either party upon ninety days' notice to the other and at the expiration of said ninety days, the said Stevens is released and relieved from all obligations to purchase said business and pay

$150.00 per month therefor, unless the said Hoopes shall, before the expiration of such period, elect to retire.

"In the event of discontinuance of this relationship, said second party shall not engage in a competitive business at Carrington, North Dakota, or surrounding territory."

The evidence discloses that the funds received during the operation of the business were deposited in an account which is spoken of by the plaintiff as the "office account," and by the defendant Stevens as the "firm account." Whenever notes, claims or real estate were purchased payments were made out of this account. In May, 1931, the defendant Stevens purchased a tax certificate covering a certain tract of land in Foster county. Payment for this certificate was made with funds drawn from the so-called "office" or "firm" account. The assignment of the certificate was taken in the name of Stevens with the consent of the plaintiff and title to the land went to Stevens.

Stevens later sold the land to the defendant Lester and gave him a contract for deed. In the fall of 1933 the plaintiff and the defendant agreed that the business arrangement then and theretofore existing between them should be terminated at the end of the calendar year. The testimony shows that the parties went over their accounts and made a division of the net cash receipts. The last division was made January 3, 1934.

On January 4, 1934, the plaintiff brought this action to compel the defendant Stevens to convey the land in question here to the plaintiff, and, also, to transfer and deliver to him the contract for deed and the notes that had been executed by Lester in evidence of the purchase price. The plaintiff also asked that the defendant Lester be enjoined from paying the defendant Stevens any moneys due under the agreement for the purchase and sale of said land. The evidence discloses that later the defendant Lester obtained a loan from the Federal Land Bank which enabled him to pay the purchase price for the land, and he paid the same in October, 1934. The plaintiff and defendant at that time entered into a stipulation whereby it was agreed that the moneys so paid by Lester should be deposited in a bank at Carrington to abide the event of this action. The moneys were so deposited.

It is the contention of the plaintiff that under the arrangement and

agreement between the plaintiff and the defendant Stevens, as evidenced by the contracts, it was only the "net cash receipts" that were to be divided between them, and that upon the termination of such arrangement any properties, notes or accounts that might have been acquired while the arrangement was in effect would belong to the plaintiff; that consequently the plaintiff became the owner of the land in question here, and that inasmuch as the purchase price was not paid until after the arrangement between the plaintiff and the defendant had been terminated, the plaintiff is entitled to all of such moneys.

The evidence discloses that a considerable time before the termination of the arrangement between the parties, the plaintiff had requested or demanded that the defendant Stevens convey either the whole or a half interest in the land to the plaintiff. The plaintiff claims that he demanded that the defendant Stevens convey the entire title to him. The defendant Stevens, on the other hand, testified that the plaintiff requested that he (Stevens) convey a half interest in the land to the plaintiff. The undisputed fact, however, is that the defendant made no conveyance. There is no claim by either party that at the time of the termination of their business arrangement and the division of the moneys anything was said by either of them as regards the disposition of the land in question or of the moneys coming from Lester. There was no demand by the plaintiff that the defendant Stevens convey the land to the plaintiff before the moneys be divided. This action was brought immediately after the moneys had been divided.

There is no dispute but that the tax certificate was purchased with moneys taken from the so-called office or firm account, and that all moneys expended incident to perfecting title to the land came from such account. It is not denied that if the purchase moneys had been paid by Lester before the business relations between the plaintiff and the defendant had been terminated that such moneys should have been divided equally between the plaintiff and the defendant.

It appears from the evidence that other tracts of land had been acquired with funds drawn from the office account. The plaintiff Hoopes testified: "We had two other pieces of land in about the same situation, at that time, as I recall. We had taken in another tract by acquiring it through a tax sale certificate; and then we had another tract, in which we had done some work for the parties, and we had a deed

for it. The land sold upon contract to Lester was treated just the same as these other lands I spoke of. They were, likewise, purchased with office money. We didn't succeed in getting any considerable amount of cash out of these other lands; but whatever it was, the proceeds went into cash receipts, and that was divided. The other land was carried in my name."

In determining this case the trial court filed a written memorandum opinion from which we quote:

"Mr. Hoopes seeks to recover the whole fund on the theory that at the time of the close of the partnership in January, 1934, the land had not yet been reduced to actual money, and therefore, did not constitute a 'cash asset' subject to division between them. . . .

"It will be noticed that this land was purchased by money taken out of the office funds which as yet had not been disbursed. In that respect it would have been subject to division at the end of the year as an additional 'cash asset' of the office. It further appears that likewise other sums were paid out of the office funds, such as the expense of getting the tax deed, the expense of getting title, the expense of the quit claim deed,—in fact, every expense incident to the carrying through of the deal to its conclusion and the putting of the money in question into the bank. It will be noted that the contracts quoted from have reference to the *law and collection business* operated by Mr. Hoopes at Carrington, North Dakota. It does not refer to outside deals or ventures which the parties, or either of them, might undertake or in which they might participate. The money taken out of the office treasury for the purpose indicated was thereby segregated from that fund entirely and went into other property which became not the property of the office, but which became the property of these two men, not because they were members of the Hoopes firm or entitled to participate in its earnings, either during the year or at the end of the year, but because they had gone into a business transaction entirely outside of that organization. It is true that the money to buy and to carry on the land deal came out of the office funds, but it is also true that if this money had not been thus separated from the office funds it would later have been divided between the parties to the contract. This fund, however, was ear-marked, absolutely withdrawn from the firm dealings

so far as the law and collection office was concerned and became a separate project, venture or deal of the parties, a speculation entirely without the purview of a law or collection business. If it had been a losing game, unquestionably each would have lost what they put into it. It has been quite profitable and in view of the facts it seems to me that no conclusion can be arrived at other than that there must be a division of these profits, that is, a division of the money now in the Bank, between the plaintiff and the defendant.

"It will be noted that all through the case and in the briefs and arguments of counsel that the case was tried on the theory that either Mr. Hoopes was entitled to the whole fund or else each of the parties to half of it. As I see the situation each should recover one-half."

A careful consideration of the evidence leads us to the same conclusion as that reached by the trial court. Not only did the written contract (as the trial court pointed out in his memorandum opinion) "have reference to the law and collection business operated by Mr. Hoopes at Carrington, North Dakota," but such written contract did not say that upon termination of the relation between the parties each of the parties should share only in the net cash receipts and that any cash receipts that might have been converted into properties or securities should belong to only one of the parties. What the written agreement did say was that "at the end of each calendar year or the termination of such relationship *the net cash receipts of a certain law and collection business* located at Carrington, North Dakota, and operated by the first party *shall be computed* and first party and second party *shall share and share alike in such profits and losses accruing therefrom.*"

If the written contract is susceptible of the construction for which the plaintiff contends, then if all the net cash receipts had been invested in marketable securities, upon the termination of the relationship between the parties, all the net cash receipts which had been thus converted into securities would have belonged to the plaintiff and the defendant would in effect have been deprived of any share in the profits that had been realized. The provision for the division of the net cash receipts was applicable not only upon the termination of the relationship but at the end of each calendar year. As we construe the contract it contemplated that during the operation of the business the parties

should share equally, both in profits and in losses. The judgment appealed from gave effect to the contract as thus construed.

The judgment must be and is affirmed.

BURKE, Ch. J., and MORRIS, NUESSLE and BURR, JJ., concur.